and we will hear from the appellants. Good morning and may it please the court, Doug Lieb for the appellants Nathan and Philip Barnett. Philip and Nathan are conceitedly innocent men and it's also not disputed on this rule 12b6 motion. It's just horrible, absolutely horrible. We could talk about that for days. If you're looking for sympathy from this court, you got it. I mean and anybody else on that. The issue before us is what is this role in West Virginia of a prosecuting attorney? Is it a state officer? Is it a county officer? And so proceed directly with that issue. Yes, Judge, when the answer is that under West Virginia law, elected county prosecuting attorneys exercise county authority, not state authority, when they train, supervise, and discipline their subordinates in the performance of their job duties. How do we know that? There are at least three factors. Number one is constitutional structure. It's right there in the West Virginia Constitution. Prosecuting attorneys are county officers. They're not state officers and that's a crucial factor that this court's sister circuits, second, third, have relied on to conclude that county prosecutors exercise county authority in this area. Number two, you're getting that from that McMillan case, Alabama case in which the Supreme Court, the Alabama Constitution, said it was state officers. Here, this one says county officers. Exactly. In McMillan, it's right, it was right there in the Alabama Constitution that these individuals were part of the state executive branch and they were subject to the direct supervision and control of the governor and the state attorney general of Alabama. Those were sheriffs in the example, let's say the decision to charge, indictments and things of that nature, would you say they are county officers in that instance or state? For purposes of making individualized case-by-case decisions about whether to bring charges, whether to indict, etc., the prosecutor exercises the prosecutorial power of the state. That's in every state it's people v. Jones, state v. Jones, Commonwealth v. Jones, not Cabell County v. Jones. Where we get the differentiation for training is because it's a different function and the first reason is that they're county officers. The second reason is their employees, the people who they are supervising, training, disciplining, are county employees. They work for the county as a they're paid with county money, the County Commission has to consent, i.e. sign off on their hiring, they work in county offices. The idea that a West Virginia assistant prosecuting attorney would consider themselves a state employee is nonsensical. Because they are county employees who are being supervised by a county officer, the function of training them to do their job. So, if you get there, you've got to satisfy Monel in terms of being able to go against the county. What is the specific training violation that you allege, or is there more than one? I don't know, what are you alleging here? Sure, so I don't think we specifically limit ourselves in our complaint to any particular theory of of Monel liability at this juncture, but the district court identified and ruled on two, and so for present purposes I think we can consider those two. The first is what you might call a generalized failure to train. Essentially, and some subsequent discovery bore this out, there is no training of any kind about anything in this office. And so the district court ruled that we could not proceed on that theory because it would be impermissible under Vandekamp versus Goldstein, which is a federal prosecutorial immunity case, which is error. It also had this additional observation about Connick versus Thompson, which was essentially to suggest that we didn't, you know, plead enough violations in order to state a failure to train claim. Connick said you can't go based on a single Brady violation. Right, so Connick says that you cannot prove a failure to train claim based on deliberate indifference based on a single Brady violation, because in order to suggest that a policymaker had enough knowledge of a problem of constitutional magnitude, you need more than one incident. We did not attempt to cure this deficiency by amendment because the district court independently told us we couldn't proceed with this claim under Vandekamp, right? And so I think to the extent that that's the issue, the way to address that is to vacate the district court's erroneous ruling that these people are, that the you know, if there are any concerns about Connick, we can elaborate on those in an amended pleading, and we can, you know, plead additional instances, and we can take that up in due course. But the district court denied us that opportunity because it erroneously concluded that these people were exercising state, not enough to say that potentially there's a pattern, and then you get to come forth with the evidence of the pattern. I'm not sure your honors even need to go that far in that our adversaries didn't contest the sufficiency of our substantive allegations at all. I mean, the entire motion to dismiss in this case was first focused on the question of whether the county commission is the right county body to be sued, which eventually that fell by the wayside, and it's clear that it is. And then it was addressed to this question of, is it state or municipal authority? No one made any arguments below that we didn't state a Monell claim, that we didn't, you know, have enough, you know, pattern or practice allegations. This is a 12v6 motion, your honor. You can't get a claim on Monell unless you allege that. Monell doesn't allow you to just go against a county or governmental entity without some pattern or some kind of policy or tradition or something you set up there. And Kornick says it can't be one, and that's not a pattern. The question is, does your complaint sufficiently set forth at least plausible allegations to satisfy Quambley that, you know, there's a pattern, then you go forward from there. So, you know, I'm just giving you at terms of their position. I don't think it's as bland as the way you painted it. Well, your honor, I do think it's important to note that that argument was never raised by any party or by the only defendant applicable in the district court. I mean, if you bring something up to this court and we know the law, you can't bring a, you know, no one challenges that you didn't allege a pattern, and if it's not in the complaint at all, you think we just say, no one challenged that? Well, your honor, I think what would be the appropriate thing to do would be for us to have the opportunity to amend to do that, which we can. We were denied that opportunity because the district court made an erroneous legal ruling that said our claim couldn't go forward for completely independent legal reasons, and thus there was no reason for us to try to amend. And so... Does the county have any control over what the prosecutor does during a criminal proceeding? Seems to me that's the real problem you're facing here. The county doesn't have any control over how the prosecutor conducts the case, but the prosecutor acts on behalf of the state under West Virginia law. Judge Keenan, I think the prosecutor exercises the prosecutorial power of the state when the prosecutor decides what charges... But does the county have any control over how the prosecuting attorney conducts a case? That just goes to show that it is the prosecutor and not the county commission who is the final policymaker in this area. There are two separate questions, your honor. Yeah, but you're not answering my question. Well, I think... My question is, does the county have any control over how the prosecutor conducts his or her case? The county commission does not control how the prosecutor does that. The prosecutor makes that decision. And this was a decision made during the course of a prosecution that there was no Brady material. The decision was wrong. Okay? But why is that decision... How is that decision attributable to the county? Well, your honor, the failure to train... The generalized failure to train theory is separate and apart from that. That's a separate issue. But as to the issue of what you might call a single act supervisory Monell liability claim, the answer to your honor's question is that just because a prosecution has been initiated doesn't necessarily mean that Mr. Childs was not acting in a supervisory capacity. So one, we think the record will bear out as the preliminary phases of discovery on this claim showed before it was cut short. But with respect to pre-trial discovery in this matter, the assistant was basically kind of operating out on her own. And yes, Childs was involved in the decision to charge these individuals. I was going to ask that because I thought Childs was... My reading of it was that Childs was an active participant in the prosecution of this case. He was, but particularly at later phases. And so what I'm trying to suggest is that there's no reason that what Childs was doing cannot be both an exercise of state prosecutorial authority and county supervisory authority. He was doing both of those things at the same time. And I understand that that might mean it's a little bit hard to figure out where the line is between the two or how you parse that out. But I think the way to deal with that concern is to put us to our burden. Okay. But what is the determination of what is Brady material, disclosable Brady material or mandatory disclosable? How is that decision in any way an exercise of county authority? I mean, you've got to make that connection in order to make your case. Right. And the answer to your question, Your Honor, is if Assistant Prosecuting Attorney Howard comes into Judge Childs in her weekly supervision meeting and says, you know, sorry, I called him Judge Childs. He later became a judge. If she goes into Mr. Childs's office and says, you know, Chris, I'm struggling on this case. I've got discovery materials, X, Y, and Z. I don't know whether they rise to the level of materiality. What do you think? And he gives her his opinion and then she goes off and makes a decision. That's him acting as her boss. That's him supervising a county employee in his capacity as the county official using county funds for county purposes. So if the county's really liable, any time that a decision is made by a prosecutor, if the decision, if the prosecutor is supervising somebody, okay, they're saying the county's liable. Now, what if the prosecutor isn't supervising somebody? Well, if the prosecutor... No, I need to follow through if I could. So if the prosecutor isn't supervising somebody but makes the exact same decision, is the county liable? No. Okay. Well, how can the exact same decision then be, open the county to liability simply because there were two prosecutors on the case rather than one? In much the same way, Your Honor, that other failures of training and two prosecutors on the case, it's because there was a final municipal policymaker, the single elected county prosecuting attorney who was directly involved. So it's not simply a matter of someone asked their boss... What is the policy involved in determining whether there's Brady material? That's an issue of constitutional law. That's not policy, is it? Well, I think... Either he was right or he was wrong and he was wrong in this case. Separate and apart from the fact that there was no training whatsoever, which is an independent theory, which is tangential to this, Your Honor. Separate and apart from that, I would not agree that that is not a policy choice in the sense that we don't know at this point in time, and it's not clear on the face of the pleadings, what the subjective reasons were for the non-disclosure in this instance. Every trial decision becomes a policy decision if you're the head prosecutor. I don't think every trial decision becomes a policy decision. I think every trial decision that is undertaken in a supervisory capacity where you delegate responsibility to your assistant and they're handling pretrial discovery, and they go out and make a representation that there's no exculpatory evidence, and then you later become subjectively aware of exculpatory evidence and ratify the decision not to disclose it in those circumstances, then yes, it does... which I think arise vanishingly rarely. In those circumstances, it does become a county decision because you are the final municipal policymaker for prosecutorial matters as the county itself concedes. All right, Mr. Lee. Thank you, Your Honor. We've got some time. We'll hear from Mr. Kinney. Ms. Kinney. I get that all the time. McKinney. Only when you look at the last name. Good morning, and may it please the court. My name is Sandra Kinney, and I represent the Cabell County Commission. The district court properly held that the Cabell County Commission cannot be sued for this single incident policymaker claim under Monell, premised on the prosecuting attorney's alleged failure to supervise his assistant while they were prosecuting the district court didn't call it a single incident. It was the district court that read that complaint more broadly. The district court dropped a footnote indicating that perhaps the... based on the allegations in the complaint, that perhaps the allegations were that there was a failure to train attorneys, but beyond that, that was the only reference to the single incident Monell claim, and in fact, in the briefing of this case, the appellants at in their opening brief, they have stated that as the complaint was pleaded, it is a single incident Monell claim. If it's pled that way, 12B6 is where we are. If not, we're going to go to the next stage on it, but in any event, you have the McMillan case. The Supreme Court dealt with this issue dealing with Alabama, and this question was coming up as to how sheriffs were to be categorized, and the Supreme Court just laid into it that the Alabama Constitution characterized sheriffs as state officers, and here, interesting enough, you've got a West Virginia Constitution characterizing these prosecuting attorneys as county officers. Is that... that seems to definitely point that to some degree, these prosecuting attorneys for counties are county officers. Constitution says it. Supreme Court talked about it in McMillan. Well, that may be the case, but that's not... that's not what is at issue in this case. There were two theories of liability. It's not at issue as to whether these prosecuting attorneys here are county officers because you have to have a final authority for Monell liability. The first thing, you got to terminate the final authority. That's not determinative or at least indicative that they're at least that? Well, I think... I agree with what you're saying, Your Honor, but what my point was, what I was trying to get to is that on the first theory of liability, the District Court decided that when a prosecuting attorney makes decisions on what evidence to disclose, that that is an action on behalf of the state. True, but that's different, and that's what the Second and the Ninth Circuit differentiated in a case very similar to this. It's one thing, as Judge Keenan alluded to, is the conduct of the trial. What you introduce, whether it's Brady or not, it's another thing to train. It's another thing to supervise because that brings in Monell liability if the... if the ultimate authority, which is this district attorney elected by the county, Constitution says it's a county officer, is responsible for the training of assistant district attorneys. That's the allegation. Not what they actually did is the lack of training, and if there's lack of training or pattern of a lack of training or policy or condition or a tradition, Monell liability kicks in. That's the issue that we'll, at least from what I see, we'll confront in this case. Well, Your Honor... We can talk about, well, you don't tell... I mean, that's taking care of in Vandekamp. Individual liability is not here. You can't go against this district attorney for individual liability because of this, but Cormick, like this case, is an official capacity claim. Yes, Your Honor, we understand that, and it is not exactly true that there was no failure to train in the office. We had dropped a footnote in our brief referencing... It doesn't have to exactly be true. When you're dealing with 12 v. 6, you look at it in the light most favorable, or you take the allegations as if stated as true. Who does the prosecuting attorney represent when training the assistant prosecuting attorneys? Does the prosecuting attorney represent the state, or does the prosecuting attorney represent the county? It is our position that the prosecuting attorney represents the state when training assistants on this core prosecutorial duty of what evidence to disclose and what their Brady obligations are. Then how do you reconcile that with Judge Wynn's point that they are designated, the prosecutor is designated as a county officer? I mean, it can't be just that he gets his paycheck, that the county gives him some money. What constitutes a county officer under West Virginia law? The county officers are identified in the West Virginia Constitution. However, the West Virginia Supreme Court of Appeals has interpreted the Constitution in context with the code and held that under West Virginia law, a prosecuting attorney exercises the sovereign power of the state when instituting prosecutions and when securing convictions. County commissions... How about when training? That part is given, what you just said right there. I mean, that's agreement with the Second and the Ninth Circuit that if you're dealing with the actual what to prosecute and what goes on, that's state, state laws. I mean, all that is what you're dealing with. Training, supervision, Second and Ninth Circuit, these aligns with the Milling case, the Supreme Court case. That's a, especially when the county officers, you've got a duty to train those officers. You've got a duty to train your attorneys in that office. In West Virginia Code Section 7-4-6, the legislature created the West Virginia Prosecuting Attorneys Institute and the West Virginia Prosecuting Attorneys Institute, which is a statewide body, is charged with general and specific training of the county prosecuting attorneys. That is where... Would that be more of a delegation of something the county would do? In other words, the county has the ultimate responsibility to train constitutionally. That's the officer. Whoever that officer, he has a duty to handle the business of that office, to bring in people who are competent, to train them, to do what he got to do. The county officer's doing that. But it's not inconsistent to have an institute that's established that would allow the county to send those lawyers to that institute to be trained. I don't know if they take on the ultimate responsibility still with the district attorney. Well, Your Honor, the Supreme Court recognized in the Connick case that training on Brady violations is not necessarily something that rests on an elected prosecuting attorney because lawyers receive that kind of training in law school and they have an ethical obligation to follow the law, especially the law with regard to the constitutional rights of criminal defendants. That was as simple as that. Every law student that come out knew about Brady violations, Gigio violations, knew all the law. But when you work for a district attorney, that is a specific area of the law. Prosecuting is a whole different thing. There are certain nuances there. Like if you become an immigration lawyer or whatever, coming from law school is not going to say, well, he knows how to do it. It just says that you're trained in a position to be, you've got the education where you can be trained to do it. But here the question is, and it's a general question in terms of, it's not the end of it because you still have to establish whether it's a pattern at some point in time, even if the complaint alleges it. But here the question is simple as to whether here a law student, general area of the law, becomes an assistant district attorney working for final authority within the county, the constitution says in the office, does that authority have a duty to ensure that little royal lawyer just got out of law school or wherever he's come from understands what a Brady violation is or Brady requirement. That's the question. Did you properly train? Could have. Well, I don't. Because we're 12 and 6. That's correct, Your Honor. This is a rule 12B6 motion and that the district court granted. And throughout the briefing, the appellants have asserted, they have asserted that their case is a single incident liability claim under Monell. And. The district court didn't buy that. The district court said it was much broader. When it said it read the complaint to be much broader than that. But I got that point. If that's the case, you probably bail on the corner. That's the district court made that determination. Yes. And as we noted in our brief, it's our position that the appellants have abandoned that issue, that failure to train issue. The only sort of a factual description is that Judge Childs failed to intervene and correct Miss Howard's suppression of evidence by any means. There's no discussion in the brief of a failure to train. There's no section on training in their brief other than to criticize the lower court's mention of the holding in Connick. And. Let me ask you this. So the lower court analyzed the, it appears, analyzed this case using Vandekamp, which, of course, we know MacMillan says you have to look at the state law. It appears that she looked at federal prosecutorial immunity, or he, in making a decision. I'm just curious to hear what your position is on his reliance on Vandekamp, because I don't know if that was the, based on what we know from MacMillan, it seems as if it should have been some consideration of the state law. Uh. Yes, Your Honor. The court, the lower court, drew an analogy from Vandekamp in looking at the allegations in this case. And you have to take the allegations, you have to take this in the context of this case where you have a prosecuting attorney who is, by the opening lines of the allegations in the complaint against the county commission, personally prosecuting this case against the defendants. And looked at how, excuse me, both Judge Childs and Ms. Howard would be immune from suit under the doctrine of absolute prosecutorial immunity based upon decisions with regard to the disclosure of our core prosecutorial decisions that are made when exercising the authority of the state. The court found an analogy to Vandekamp that a similar anomaly would arise, as was highlighted in Vandekamp, that it would be anomalous to subject the county commission to suit for the same unconstitutional acts associated with the prosecutorial decision making. But Vandekamp was not the correct case to look at. It's MacMillan. MacMillan is the leading case in the authoritative case. We agree with the court. Which says that you have to look at the state law. Yes, Your Honor. And we believe the court did look at state law by citing to the relevant Supreme Court authority. They cited to State Ex Rel Skinner v. Dossier, which holds that when the prosecutors exercise the sovereign power of the state, when they prosecute cases and act to secure convictions, and also the State Ex Rel Morrissey decision, which has a similar holding. And we find the suggestion that this is difficult to parse, but that it is capable of being parsed to be incorrect. In the context of this case, it is impossible to extract the supervisory capacity from the prosecutorial capacity. These two prosecutors were working on this case together. It is alleged in the complaint that he was assisted by Jarrah Howard. They made... I practiced before Judge Childs, and Judge Howard is likewise a family law judge in Cabell County, West Virginia. So, in the sense that they were both prosecuting this case, they were both involved with it, Judge Childs, as was argued earlier, was involved in charging the case. Judge Childs was involved, perhaps even farther back, as you see in the complaint, a reference to the impeachment evidence that was allegedly withheld, where an individual named Greg Bailey was allegedly a well-known police informant who would contact the sheriff's office, and then Chris Childs would allegedly provide him with consideration and favors with regard to pending criminal charges. So, Chris Childs was involved in this case from the beginning. And parsing out when he is making prosecutorial strategy decisions... Individual liability is not... I mean, that's just not here. We're pretty clear with that from Bandicam as far as the Childs is concerned. Is that correct? Individual liability is not... Yes, Your Honor. But likewise... We're not talking about that. We're talking about supervisory-type liability or authority position, the final decision-making decision within someone who has the authority to do it. You mentioned state law. Miller looked at the Alabama Constitution. Here you've got the West Virginia Constitution. The West Virginia Constitution is the state law. It's the sovereign law of the state. It says that they are county officers. That seems to be coming back to us. Do this. Talk about the Walker case, the Second Circuit case, and the Ninth Circuit case, I think it was Goldstein, that it seems to me if we go in your direction, we're going to create a circuit split. Is that correct? Well, yes, Your Honor, because what we're advocating is a decision that is consistent with the Ninth Circuit because in the Goldstein case, the Ninth Circuit distinguished the decision that it was making about a policy that had to do with an index of jailhouse informants and distinguishing it from training prosecutors and supervising prosecutors in prosecutorial strategy. These cases are all so rooted in the particular law of the state. Don't you agree? I mean, we've got to make this decision looking at the function of the prosecutor and whether the prosecutor is exercising county or state authority. I'm not sure if you aren't conceding too readily that there would be a circuit split, but what I'd like to know is if we disagree with you on the issue that the county is responsible for training the prosecutors, where does that leave your case? Well, if you disagree with us on the training issue, then I expect that the case would be brought to the district court to pick up the litigation on that issue. You were relying on this state institute that does the training. Who funds the state institute? Is it the counties who fund it? The state of West Virginia funds it, and to be honest, I don't know. Don't the counties pay in their share? I do not know the answer to that, Your Honor. I apologize. So you're saying, then essentially you're agreeing that your case rises and falls over whether the county has the duty to train irrespective of the fact that this occurred during your criminal trial. Essentially, we do not necessarily agree with that. If you look at the West Virginia Governmental Torts Claim and Insurance Reform Act, the counties are not responsible for intentional acts of their employees. Under that law, a prosecuting attorney is categorized as an employee. But you're talking about torts. I mean, you're not talking about a strategic decision made in the course of a trial that was incorrect, that was constitutionally incorrect. Well, I was responding on the issue of training, Your Honor. We believe that the district court made the right decision as to the supervision issue. We view those as two separate issues, failure to train, failure to supervise. In our opinion, they're different issues. And in the briefing, the focus by both parties was on the supervision issue, not so much on the training issue. There were cases that were cited that addressed some training, but by and large, the cases were failing to make office-wide policies. West Virginia is a small state. We do not have a prosecuting attorney in any of our counties who sits in an office while hundreds of assistants are prosecuting cases. The consequences of finding that the county... I'm sorry, my time is up. May I continue my answer? The consequences of holding that a county commission would have to come in and defend one of these cases because a prosecuting attorney is a final municipal policymaker for the county would really be disruptive of the way prosecuting attorney offices operate and the way county commissions operate in West Virginia. Well, it's not the end of the day, Julie. I mean, this is trouble six. We went back. We've got all this evidence. We did provide the training and other things. It doesn't mean you lost the case. It just means it's about 12 and six. I understand where we are procedurally. The sky's not falling. So there is a day. Thank you for your argument today. And we will give you, Mr. Lee, your rebuttal if you need it. Thank you, your honor. Just briefly, I want to remind this court of its statement in the 2022 decision in Starbuck versus Williamsburg James City County School Board, which is that we, quote, must not dismiss a civil rights complaint unless it appears to a certainty that plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested. And so I understand that perhaps there could have been additional clarity or additional detail in initial pleadings with regard to failure to train. The motion was a moving target. The district court's theory of what was going on was a moving target a little bit. But the right thing to do here is to vacate the district court's erroneous decision, hold that as a matter of West Virginia law, county prosecutors exercise county authority when they train, discipline, and supervise, and then give us, the district court will have an opportunity to amend our complaint in the district court, state whatever theories of liability that we want to pursue, that we have the factual allegations to back up that are consistent with that statement of the law from this court. But how do we hold, how do we hold the county prosecutors, how can we do that in ruling on a 12B6 motion? You're saying that as a matter of law, because they are listed in the constitution as county officers, that they are exercising county authority? Isn't there more that goes into the consideration? I'm not saying under no circumstance you're entitled to a remand, but it seems to me you're asking us to decide an issue on which we don't have much evidence. I mean, we don't know how counties operate in terms of training people. We don't know, we don't know what, what they do or what they don't do. So how would we make that kind of blanket statement in the context of a 12B6? Well, Your Honor, under McMillan, this is a question of law, albeit one that does depend upon customs and usages that have the force of law. To the extent the court wants to send this back for additional discovery on those customs and usages, we're prepared to engage in that discovery. Let me ask you another question, if I could, that's really hanging me up, because like Judge Wynn and I'm sure Judge Benjamin, I mean, this is a terrible, I mean, this is unspeakably horrible what happened to these people in terms of serving time for crimes they didn't commit. What I'm concerned with is whether your theory of the case and the relief you're asking for is going to put every trial decision into a liability situation for a county. In other words, every time the county prosecutor, every time the prosecutor exercising the authority of the state in trying a criminal case makes an error, a constitutional error, the county then becomes liable. I mean, what would stop any constitutional error from becoming a failure to train case every time the lawyer made a mistake in court? The ordinary doctrines of Monell liability that require us to prove our claim is the short answer to that question, Your Honor, which is that. In other words, you're going to need more than what you have on this 1236. We got to prove it. The second circuit is already pretty much gone there and differentiated that you can be a county officer, but insofar as it gave the analogy that at least insofar as whether to file an indictment in proper filing, that's a state type function. But if you've got a long history of negligent disciplinary practices regarding the law enforcement, that's a different thing. That's a county thing. So the differentiation of where you're seeking to go here, you're just not there yet. And I'm not sure where you, whether you can prevail beyond here. All that's before us is do you survive 1236. We're not going to make every decision that's going to happen beyond now, nor make any definitive determination of what Virginia law absolutely says. Now, I will say in the second circuit, and I think ninth circuit, they did a survey of the state law. I don't think that was done here to determine that functionality, not just the constitution, but the survey of the state law and how they viewed it. I agree with Your Honor. If I could just hazard, I see my time is about to expire, but one more answer to Judge Keenan's question. Number one, you can't bring a constitutional fair trial claim unless you were convicted and then your conviction was overturned, right? So it's important to understand that this kind of claim generally only arises in the wrongful conviction context, because there needs to be a favorable termination of the criminal. I just want to make a connection there. This is a Monell situation. It doesn't matter the claim. It's a question of whether or not the county is in a position where it would be liable because you have a final authority figure who has done something as a pattern or some negligent type thing. Could be civil rights, could be any other type of 1983 type action here. So those specific facts, I'm not getting how they change that analogy. It wasn't a legal point, Your Honor. It was an attempt to address sort of the floodgates concern, and the answer to the floodgates concern is, number one, this law from the second, third, and ninth circuit has not been a secret, and I think there have been precisely two cases in the history of West Virginia, this being one of them, in which a plaintiff advanced this argument. The other was the Gardner case discussed in the district court opinion, and number two, these claims against prosecutors, against prosecutors, generally only arise in the context of vacated convictions because the criminal charges need to be favorably terminated. I appreciate your argument. Thank you. We will come down, greet counsel, and proceed to the final case on the telephone.
judges: James Andrew Wynn, DeAndrea Gist Benjamin, Barbara Milano Keenan